2026 IL App (1st) 260483-U
Order filed: August 5, 2026

FIRST DISTRICT
THIRD DIVISION

No. 1-26-0483B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos.   19 CR 0937101 |
| | ) | 25 CR 1042301 |
| JOSE ORTEGA PALOS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Charles P. Burns, |
| | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Martin and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirmed the denial of defendant's petition for release, which argued that his continued detention was not necessary, and the denial of his motion for relief from that decision.

¶ 2    Defendant-appellant, Jose Ortega Palos, was detained pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2024)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act)[1] on a

---

[1] While commonly known by these names, neither the Illinois Compiled Statutes nor the forgoing public act refer to the Act as the "Safety, Accountability, Fairness and Equity-Today" Act, *i.e.*, SAFE-T Act, or the "Pretrial Fairness Act." See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. Certain provisions of the legislation in question were amended by Pub. Act 102-1104 (eff. Jan. 1, 2023). See *Rowe*, 2023 IL

No. 1-26-0483B

violation of probation (case number 19 CR 09371) and on a charge of possession of a weapon by a felon (case number 25 CR 1042301). He appeals from a circuit court order denying his petition for pretrial release after his motion for relief from that order was denied. We affirm.

¶ 3 This appeal involves two criminal matters. In the first case (case number 19 CR 09371), on July 11, 2019, defendant was charged by indictment with two counts of unlawful possession of a weapon by a felon after being convicted of felony forgery under "federal law" (720 ILCS 5/24-1.1(a) (West 2018)) and three counts of reckless discharge of a firearm which endangered the bodily safety of three individuals on June 14, 2019 (720 ILCS 5/24-1.5(a) (West 2018)) (first case). Defendant's bond was set at 20,000D.

¶ 4 On September 1, 2020, by agreement, before Judge Charles P. Burns, defendant pled guilty to one count of reckless discharge of a firearm and was sentenced to 180 days in the Cook County Department of Corrections with pre-sentence custody credit of 441 days and two years of probation. An order setting forth the conditions of probation is not in the record on appeal. The State nol-prossed the remaining counts.

¶ 5 The State, on November 17, 2021, with leave of court, filed a petition alleging that defendant failed to submit to required DNA indexing scheduled for August 16, September 7, and November 10, 2021, and required random drug testing scheduled for November 10, 2021. The State incorrectly used a form pleading titled, "Petition for a Hearing on Violation of Bail Bond Conditions and Application to Increase Amount of Bail Pursuant to 725 ILC 5/110-S(a)&(e)." There is no dispute that the pleading was intended to be a petition for a violation of probation and

129248, ¶ 4. The supreme court initially stayed the implementation of this legislation but vacated that stay effective September 18, 2023. *Id.* ¶ 52.

was treated as such. Defendant was not in court on November 17, and the court issued a no bail arrest warrant (2021 arrest warrant).

¶ 6     Subsequently, in the second case (25 CR 1042301), defendant was arrested on August 24, 2025, and charged with eight counts of aggravated battery to a police officer (720 ILCS 5/12-3.05(d) (4) (West 2024)), two counts of aggravated unlawful possession of a weapon (720 ILCS 5/24-1.6(a)(1)-(3) (West 2024)), and one count of unlawful possession of a weapon by a felon, having been convicted of reckless discharge of a firearm in the first case (720 ILCS 24-1.1(a) (West 2024)) (second case).

¶ 7     On August 26, 2025, in the first case, the court allowed the State leave to file a second petition for violation of probation based on the new charges. The court executed the 2021 arrest warrant and ordered that the no bail bond was to stand and defendant be detained. The first case was set for the next day before Judge Burns. The supporting record does not include a transcript of the proceedings or any orders which were entered on that court date. Defendant continues to be detained on the first case.

¶ 8     Additionally, on August 26, in the second case, the State filed a petition for pretrial detention under 725 ILCS 5/110-6.1(a) (petition for detention) which asserted that the three statutory requirements for pretrial detention were met. The State alleged that the proof is evident or the presumption great that defendant committed an eligible offense, a non-probationable felony of unlawful possession of a weapon by a felon, posed a real and present threat to the safety of any person of persons or the community, based on the articulable facts of the case and no condition or combination of conditions could mitigate that threat. Pretrial Services assessed defendant at a supervision level 3 and flagged new violent criminal activity.

¶ 9    Judge Shauna L. Boliker held a hearing on the petition for detention that day. According to the State's proffer, on August 24, 2025, at 7:36 p.m., police responded to a "person-with-a-gun call." The caller described the offender as "a male Hispanic wearing a cowboy hat and blue shirt who pointed a firearm at the caller/victim." When they arrived at a location on East 97th Street, police observed defendant who matched the description. After seeing the police, defendant "clutched his waistband and turned his body away from the officers to further avoid eye contact." The officers knew such behavior to be indicative of an attempt to conceal a firearm. The police exited their vehicle to conduct an investigatory stop. As the officers attempted to detain him, defendant reached for a firearm which was holstered in his waistband and a struggle ensued. One officer "recovered a 9-millimeter semiautomatic Smith & Wesson M&P handgun that was loaded with a round in the chambers and a magazine that was loaded" from defendant's waistband. Defendant continued to resist and pull away from the officers. Defendant bit one officer on the biceps and struck the other officer in the chin with a closed fist. Defendant fled on foot and the officers chased him. Defendant entered the basement of a nearby residence. The owner consented to the police entering the building. Police found defendant hiding in the basement. Defendant does not have a valid Firearm Owners Identification (FOID) card or Concealed Carry License (CCL).

¶ 10    As to defendant's criminal history, the State informed the court of defendant's conviction for reckless discharge of a firearm and the subsequent violation of probation and 2021 arrest warrant in the first case. Defendant's history also included a 2007 felony forgery conviction in the state of Arkansas with a "violation warrant."

¶ 11    The State then argued that it had met its burden by clear and convincing evidence that the proof is evident or the presumption great that defendant committed unlawful possession of a weapon as a felon, where he has two felony convictions and he was in possession of a handgun

and poses a threat to any person or persons in the community where he pointed a handgun at an individual and then resisted arrest and fought with the officers while armed with a loaded handgun. Additionally, the State argued that there are no conditions or combination of conditions which would mitigate the risk posed should defendant be released. The proffer showed that defendant was unlikely to comply with any conditions of release as he violated the terms of his probation, illegally possessed a firearm, resisted arrest, and fled from the officers. The State maintained that electronic home monitoring would "monitor where he was at, not what he was doing" and would allow defendant to continue to access weapons. The State sought defendant's detention.

¶ 12    Counsel for defendant presented mitigation. Defendant was a father of three children and employed as a landscaper. Counsel explained that COVID restrictions had prevented defendant from complying with the Sheriff Work Alternative Program (SWAP) which was a condition of his probation but that he fulfilled all other conditions. Counsel contended that defendant had not been convicted of forgery in Arkansas.

¶ 13    After the hearing, the court orally ruled and granted the State's petition to detain. The court found the State in the second case had met its required burden of proof as to all three elements necessary to detain defendant pending trial. The court noted that police recovered the firearm "literally from [defendant's] waistband." Defendant posed a danger in that while on probation, he was "out in the community" and illegally armed with a firearm which he pointed at an individual. When the police approached, defendant fought them, punched one in the face and bit the other one, creating "an incredibly dangerous situation." Defendant is a threat to the person at whom he pointed the firearm and the community. Finally, under the facts and circumstances, the court had "zero confidence" that defendant would comply with any conditions that could be imposed to mitigate the threat posed by defendant. He had violated his probation and missed court in the first

case, and a warrant was issued. Defendant never went to court to "deal with that." He fought and ran from the police.

¶ 14    After the hearing, the court entered a written order granting the State's petition for detention with written findings which were consistent with its oral rulings. In the order, the court found that the State had met its burden by clear and convincing evidence to support defendant's detention. As to the commission of the eligible detainable offense of possession of a weapon by a felon, the court found that a firearm was recovered from defendant's waistband. As to the threat posed by defendant, the court found that while on probation for aggravated discharge of a weapon, defendant pointed a gun at an individual. Additionally, the court found that defendant, while armed with a loaded firearm, fought with the arresting officers, punched one and bit the other. Finally, defendant has a violence flag in his pretrial services assessment. In determining that no condition or combination of conditions would mitigate the threat, the court found that the evidence showed defendant was not likely to comply with conditions of release. At the time of arrest, defendant was on probation for a firearm offense with an outstanding warrant for failing to appear. He fought with the arresting officers, resisted arrest, and fled and hid from the officers.

¶ 15    Subsequently, both cases proceeded before Judge Burns.

¶ 16    On December 16, 2025, defendant filed a petition for pretrial release (petition for release) as to both cases. Citing and quoting from section 110-6.1(i-5) of the Code (725 ILCS 5/110-6.1(i-5) (West 2024)), defendant argued that the court must consider whether defendant's " 'continued detention is necessary to avoid a real and present threat to the safety of any person or persons in the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution.' " Defendant alleged that he was not a threat to safety and there were conditions for release which would mitigate any danger.

¶ 17 A hearing on the petition for release was held that day. Defense counsel began by informing the court that defendant's disciplinary report from the jail (which is not in the record) showed that defendant had no infractions during his pretrial detention of 115 days. Additionally, the probation notes from the first case (which were attached to the petition for release and are in the record) indicated that defendant had maintained phone contact with his probation officer until December 20, 2021. Defense counsel argued that defendant did not know of the November 17, 2021, court date when the no bail warrant was issued. The probation notes show that the probation officer mailed defendant notice of the court date.

¶ 18 As to the second case, defense counsel stated that when the police arrived at the scene, defendant was attending a quinceañera and standing in a group that included men wearing attire similar to the description given by the caller. The caller was not present to identify the alleged offender. During the struggle with the police, defendant did not intentionally throw punches or bite either of the officers.

¶ 19 Defense counsel argued that curfew conditions or electronic home monitoring would mitigate any threat which defendant may pose if he were released. If released, defendant could return to work, reside in a rented room in his boss's home, and parent his children.

¶ 20 The State explained that in the first case, witnesses observed defendant, while under the influence of alcohol, fire shots, from the porch of his residence, into an alley. When officers arrived, defendant fled inside the residence, locked the door, and hid in the bathroom. Police recovered a firearm from the residence and casings at the scene. The State also made a proffer as to the second case which was similar to the proffer at the initial detention hearing.

¶ 21 The court denied the petition for pretrial release after determining that the three prongs necessary for an initial detention had been met. As to the danger posed by defendant to the

community and police officers, the court noted that in the second case, defendant battered and bit police officers "on the street" while illegally possessing a firearm. At that time, he "was AWOL on probation" for reckless discharge of a weapon. As to whether there were conditions to mitigate the threat, the court considered that defendant had violated probation and had no right to possess a firearm in that he was a convicted felon and concluded that defendant would not follow conditions. A curfew or electronic home monitoring would only control the location of defendant and would not prevent him from committing other crimes.

¶ 22    On January 29, 2026, defendant filed a motion for relief under Rule 604(h) (Ill. S. Ct. R. 604(h) (eff. Apr. 15, 2024)) in both cases which sought review of the court's order of December 16, 2025. Defendant argued that although the court had considered the three factors relevant to an initial detention, the petition for release required the court to determine whether his "current detention *was* still needed" (emphasis in original). Defendant contended that he would not pose a threat to safety if released. He emphasized that in the second case he was charged with possession but not the display or use of a firearm and that weapon was found after an illegal search. Additionally, the court could fashion conditions for his release which would allow him to better assist in preparing his defense to the second case and complete his probation requirements in the first case. Defendant asserted that in the first case he had been released pretrial on electronic monitoring "and upon information and belief, had zero issues during that time pre-plea" and was prevented from fulfilling his probation terms because of COVID restrictions.

¶ 23    On January 30, 2026, in the second case, defendant filed a motion to suppress evidence including the firearm recovered from defendant. On that date, the court set defendant's motion for relief and motion to suppress for hearings on March 5, 2026.

¶ 24 The court, on March 5, first held a hearing on defendant's motion to suppress the firearm and denied the motion. The court then held a hearing on defendant's motion for relief. Defendant asked the court to reconsider its December 16, 2025, decision and find that his detention "is not needed." If released, defendant would have a residence and employment and electronic home monitoring or a curfew would mitigate any threat to safety. The State objected to defendant's release. The court, again, found that all three factors necessary for an initial detention were satisfied and denied the motion.

¶ 25 Defendant appealed under Rule 604(h) (Ill. S. Ct. R. 604(h) (eff. Apr. 15, 2024)) in both cases.

¶ 26 Defendant has filed a supporting record and reports of proceedings and a notice in lieu of a Rule 604(h) memorandum (notice in lieu). By choosing not to file a supporting memorandum, defendant stands on his motion for relief for purposes of his arguments on appeal. Ill. S. Ct. R. 607(h)(7) (eff. Apr. 15, 2024). The State has filed a memorandum.

¶ 27 Defendant in the notice in lieu states that he is appealing the August 26, 2025, order granting the State's petition for detention, the December 26, 2025, order denying his petition for release from detention, and the March 5, 2026, order denying his motion for relief. However, only the issues raised in the motion for relief are before this court. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In his motion for relief, defendant did not challenge the initial detention order of August 26, 2025. He raised only arguments against the December 26, 2025, order denying his petition for release. Defendant has waived any issues as to the initial detention order. *Id.*

¶ 28 Pretrial release is governed by article 110 of the Code (725 ILCS 5/110 (West 2024)), as amended by the Act. Under the Code, the requirement of posting monetary bail has been abolished in Illinois as of September 18, 2023 in favor of pretrial release on personal recognizance or with

conditions of release. See *Id.* § 110-1.5; *People v. Rowe*, 2023 IL 129248, ¶ 52. For qualifying offenses, upon filing a verified petition requesting the denial of pretrial release, the State has the burden to prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* §§ 110-2(a), 110-6.1.

¶ 29     Where the State has filed a petition to revoke probation based on a new criminal charge and the court has not held a hearing on the petition, the Code governs whether the court can detain defendant pending the hearing on the petition. *People v. Dyer*, 2024 IL App (4th) 231524, ¶ 21. Under the Code, the defendant may be detained "if the new offense meets the criteria specified in section 110-6.1 (725 ILCS 5/110-6.1 (West 2022))." *Dyer*, 2024 IL App (4th) 231524, ¶ 21. In the second case, the charges against defendant include a charge of unlawful possession of a firearm as a felon, an offense which qualifies for detention. See 725 ILCS 5/110-6.1(a)(6)(O)(i) (West 2024). Therefore, defendant was eligible to be detained based on the new criminal charge pending a hearing on the petition to revoke probation in the first case and pending a trial in the second case.

¶ 30     If the defendant is detained pretrial, the "statute also imposes a continuing obligation for the court to assess whether continued detention is necessary." *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 21. At each subsequent hearing, the statute provides that, the circuit court must find "that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent defendant's willful flight from prosecution." *Id.* (citing 725 ILCS 5/110-6.1(i-5) (West 2022); *People v. Long*, 2023 IL App (5th) 230881, ¶ 15; *People v. Stokes*, 2024 IL App (1st) 232022-U,

¶ 36). The statute "does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required by the initial hearing." *Hongo*, 2024 IL App (1st) 232482, ¶ 21 (citing *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13). The finding required by section 110-6.1(i-5) is subject to a less demanding standard than that required at the detention hearing. *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14 ("when the trial court found that the State presented clear and convincing evidence on all three elements required by section 110.6-1(e), that finding necessarily encompassed the continued detention finding required by section 110-6.1(i-5)").

¶ 31    As framed by defendant in the petition for release, the question before the circuit court was whether defendant's continued detention was "necessary to avoid a real and present threat to the safety of any person or persons of the community, based on the specific articulable facts of the case.' " *Casey*, 2024 IL App 3d 230568, ¶ 13. As discussed, for continued detention, "the State does not need to establish the propositions necessary at an initial detention hearing. [Citation omitted.] Rather, the defendant must present some new information or change in circumstances to show that his continued detention is no longer necessary." *People v Rose-Watkins*, 2026 IL App 1st 252509-U, ¶ 24 (citing *Casey*, 2024 IL App 3d 230568, ¶ 13; *People v. Walton*, 2024 IL App (4th) 240541, ¶¶ 24-29). The court, in denying the petition for release, made the three findings required for initial detention. These findings "are not generally or necessarily fatal to our review." *People v. Washington*, 2024 IL App 1st 240894-U, ¶ 53 (citing *Thomas*, 2024 IL App (1st) 240479, ¶ 14; *Casey*, 2024 IL App (3d) 230568, ¶ 13; *People v. Harris*, 2024 IL App (2d) 240070, ¶ 37; *Stokes*, 2024 IL App (1st) 232022-U, ¶ 36).

¶ 32    In *People v Morgan*, 2025 IL 130626, ¶ 54, our supreme court held that when parties proceed by proffer, *de novo* review applies to appeals from initial detention decisions. In reviewing

continued detention decisions, some reviewing courts have followed the reasoning of *Morgan* and have used the *de novo* standard. *People v. Sanders*, 2025 IL App 1st 251811, ¶ 48. The abuse of discretion standard has been used by other courts. *Id.* We do not need to decide the standard of review issue as our decision would be the same under either standard of review.

¶ 33    The articulable facts of the first case show that defendant, while intoxicated, fired shots into an alley from the porch of his residence and threatened the bodily safety of three individuals. Defendant acted in total disregard of public safety and was convicted of reckless discharge of a firearm.

¶ 34    While on probation for that conviction, in the second case, defendant was charged with eight counts of aggravated battery to police officers, two counts of aggravated use of a weapon, and one count of possession of a firearm as a felon. After a call to police that someone pointed a firearm at the caller, police arrived to find defendant, who matched the description, outside at a quinceañera. Defendant turned away from the officers and clutched at his waistband. Police believed he was concealing a weapon. As they attempted to detain defendant, he struggled with the officers and bit one and struck the other, while armed with a loaded firearm. His actions placed the officers and those persons attending the quinceañera in danger of harm. The articulable facts demonstrate that he is a threat to the safety of the individual who called the police, the responding police officers, and the public.

¶ 35    Further, defendant's continued detention was necessary to protect individuals and the community. The articulated circumstances of the second case show that defendant, a convicted felon, possessed a firearm in disregard of the law preventing him from doing so and without a FOID card or CCL, and committed multiple criminal offenses while on probation. Additionally, defendant fought with police, fled to avoid arrest, and hid. In the first case, defendant also

attempted to avoid arrest by hiding in his residence and was charged not only with reckless discharge of a firearm but also with the unlawful possession of that firearm. The circumstances and articulable facts of the cases demonstrate that it was highly unlikely that defendant would comply with any conditions of release.

¶ 36    In the petition for release and motion for relief, defendant presented no new information to suggest that defendant is no longer a threat or that detention is no longer necessary. In support of the petition for release, defendant presented the probation notes to show only that he made phone contact with a probation officer as late as December 20, 2021. However, on November 17, 2021, the State had filed a petition for violation of defendant's probation and the 2021 arrest warrant was issued for defendant's failure to appear on that court date. The entry for the December phone call in the probation notes states that the probation officer informed defendant of the 2021 arrest warrant and that he should "turn himself into the police." The probation officer also told him that he had failed to undergo DNA indexing and drug screening. Before his arrest in the second case, defendant never sought to address the 2021 arrest warrant or his noncompliance with probation. An entry on September 9, 2021, stated that the probation officer mailed notice of the November 17, 2021, court date to defendant. The probation notes do not constitute new evidence that show defendant's continued detention is unnecessary.

¶ 37    At the hearing on the petition for release, defendant submitted the jail disciplinary report showing he has no reported infractions while in custody. This report is not in the record on appeal. Even if we accept that the report indicated that defendant was not disciplined while in custody, this evidence would not prove that defendant would comply with conditions of release and not under detention control in light of the articulable facts of both cases which we have discussed above.

¶ 38    We reject defendant's arguments that electronic monitoring and a curfew would be sufficient to mitigate any threat posed by defendant. Electronic home monitoring is not an infallible method of preventing harm to public safety. See *People v Whitaker*, 2024 IL App 1st 232009 (where defendant was charged with offenses while on pretrial condition of electronic home monitoring). Restricting defendant to his home for certain hours or on electronic monitoring would not prevent defendant from obtaining and possessing a firearm or endangering others. The articulable facts of the first case prove defendant's argument to be meritless. Defendant was on his own porch when he recklessly discharged a firearm into a public alley and placed individuals and the community in danger and then fled into his home to avoid police.

¶ 39    For these reasons, we affirm the orders denying defendant's petition for pretrial release and motion for relief from that order.

¶ 40    Affirmed.